This is a case where the district court violated Apprendi by finding a date of deportation that had not been indicted and had not been admitted and then using that fact finding to increase the statutory maximum from 2 to 20 years. This is precisely the same error that this court denounced in the recent case of United States v. Covey and Sands. In this case, unlike in that case, the error was preserved. The remedy is vacating and remanding for resentencing. In the government's most recent letter to the court, it argues that in this case the error was not preserved. I would point the court to four sites in the excerpts of record where this issue was specifically and repeatedly preserved. At excerpt of record 3 in the PSR Objections, Mr. Urquides-Torres objected to every alleged date of deportation listed under immigration information. He did not admit to any of those. In the PSR Objections at ER 11 and ER 14, Mr. Urquides-Torres specifically articulated the problem that this court denounced in Covey and Sandoval, specifically objecting to the fact finding regarding a date of removal that occurred in this case. The government may argue that this error is harmless beyond a reasonable doubt. However, it is not. This is a case where Mr. Urquides-Torres pled guilty to an indictment that did not allege a date of removal and did not even, I believe, cite the section that he was sentenced under, 1326B. He had no notice that this date of deportation was in play. He didn't admit this date of deportation, and there's nothing in the record to suggest that this date of deportation was valid. The only evidence before the court regarding dates of deportation was listed in the PSR under immigration information. Mr. Urquides-Torres contested each of these dates. He did not admit these dates. However, it's telling that of the six dates of deportation listed in the PSR, four of these occur at a time that would not validate the statutory maximum penalty enhancement in this case. In this case, we simply cannot be sure what date of deportation Mr. Urquides-Torres pled guilty to, or even if it was one of the dates alleged in the contested PSR, and for that reason, this court should vacate and remand the sentence. Even if this court does not agree that Mr. Urquides-Torres' case should be remanded under the error pointed out by the panel in Covey and Sandoval, there's an additional error raised by that case that this court should consider, and that's the fact that this conduct that Mr. Urquides-Torres pled guilty to was never presented to the grand jury. It was never indicted. Because of this, we can't be sure what Mr. Urquides-Torres' guilty plea ratified. We can't be sure that he ratified a date of deportation that would support the enhancement under 1326B. And this, Your Honors, creates a problem with the indictment, a Fifth Amendment problem, raised by Covey and Sandoval's making the date of removal an element of the crime. And under this court's decision in United States v. Dubot, 186F3-1177, that's a structural error. I would point out, too, that this error, too, was preserved at ER 11 where Mr. Urquides-Torres objects to the fact that the conduct now being used to sentence him was never indicted nor admitted. Your Honors, I raise a couple of more issues in my briefs that I'm happy to address if the Court has questions. Otherwise, I would choose to save some time for rebuttal. And I'd like to ask you exactly what is in the record as to what he pled to. Your Honor, the indictment, I believe, I want to say it's at ER 1. I do have it here. I can look it up for you. But what he pled guilty to is the indictment. He pled guilty to just the generic conduct alleged in the indictment. There's no date of removal alleged in the indictment. The conduct that he pled guilty to allows him to be sentenced under 1326A, which authorizes a statutory maximum of two years in prison, followed by one year of supervised release, as opposed to 1326B, which authorizes the higher statutory maximum of 20 years with three years of supervised release. Again, I believe that's at ER 1. I'm attempting to find that for Your Honor. What page is the colloquy on? The indictment is at ER 1, Your Honor. The colloquy is not in the excerpts of record. The record shows that he pled guilty to precisely the conduct alleged in the indictment, which again does not indicate a date of removal. And this was standard practice in our district prior to Covey and Sandoval. Now, go back to the crime that is alleged to allow the enhancement. There, what do we have? All we have is what he pled to in handwriting, or what did he plead to there? Your Honor is referring to the plus-16 enhancement under the sentencing guidelines? Right. Your Honor, in regard to that alleged conviction, I believe Your Honors have a complaint and an abstract of judgment in that case. I believe it was the only conviction alleged that was supported by that type of documentation. The others were supported only by PSR allegations and court printouts from the various courts of the alleged convictions. However, Your Honor, as I've argued in my papers, the problem with the enhancement in this case is that it could have been based on California's overly broad theory of aiding and abetting liability. Counsel, you said that, and I don't really understand why California law doesn't still allow this to be categorically a crime of violence. As I understand it, an aider and abetter has to act with the knowledge of the criminal purpose of the perpetrator and with the intent of either committing, encouraging, or facilitating the commission of the offense. So you have to have the intent to cause an assault with great bodily harm. That's California law in aiding and abetting. I don't understand why that isn't sufficient to make it categorically a crime of violence. Your Honor, under California law, there are two problems with the aiding and abetting that make it overbroad. The first is that it extends even to promotion and instigation of an offense, which federal law doesn't permit. That's a question that was raised in this Court's decision in United States v. Corona Sanchez. And I believe it could be a question that this Court en banc is taking up in the case of United States v. Vidal. Well, Corona Sanchez is in front of the U.S. Supreme Court right now, basically, isn't it? Correct, Your Honor. But we've taken up it as Vidal en banc, which is the guideline aid and abet as opposed to the general aid and abet. Your Honor, it's my understanding that United States v. Vidal raises one aspect of the issue that I argue in my briefs, which is the promotion and instigation aspect of the California aiding and abetting theory. I've also raised another alternative problem with California's aiding and abetting statute, which is that it extends to the natural and probable consequences of a crime that the defendant may not have the mens rea to commit. But the natural, again, as I am looking at the California cases, and I'm not a California lawyer, so I may be wrong about this, but it appears to me that the question of natural and probable consequences has nothing to do with the defendant's subjective state of mind, that it's a different part of the analysis, and that is whether a reasonable person would have or should have known that the offense was a reasonable, was a foreseeable consequence of the act that they've aided and abetted. But separately, in California, you still have to prove for an aider and abetter the state of mind, which is knowledge of the criminal purpose of the perpetrator and the intention of causing that act to come about. Your Honor, my understanding is that you have to prove the state of mind for the initial crime that the aider and abetter should have known would lead to the crime of which he's convicted, whereas under Federal law, you have to show that. I don't understand that answer. I don't understand what you're saying California law requires. Your Honor, my understanding is that under California law, if you have the mens rea to commit one crime, and a natural and probable consequence of the commission of that crime is the second crime, you can be convicted of the second crime even if you didn't have the mens rea to commit the second crime, which is broader than Federal law under the cases of Syett City and the other cases that I cited in my briefs. So it's a subtle but fairly important difference, because you don't need to have the mens rea to commit the crime that you're actually convicted of, and that's the problem with California law as opposed to Federal law. So in this case, we can't be sure that Mr. Urquidez had the mens rea to commit the assault with which he was charged rather than some other crime that led to that assault. He said that he pled to willfully assaulting other inmates. Is that right? Your Honor, he pled to the generic definition of the statute which was charged in his complaint. The problem with California's indictments is that a California information or indictment necessarily includes an aiding and abetting theory. I understand, but the word willfully was added. Does that make a difference? Your Honor, no it does not, because the information in this case tracked the generic language of the statute. There's nothing in there to indicate that Mr. Urquidez didn't have the mens rea to commit some other crime that led to the assault as a result of the Federal law. Thank you, Your Honor. Good morning. May it please the Court, my name is Larry Spong. I represent the United States in this matter. There are some things that are contested here, but there are at least two things of which there is no doubt. One is this person was deported. The fact of deportation is not in doubt. Only the date of deportation. The second is he committed a felony. Whether that felony constitutes a crime of violence or, I'm sorry, fits within the sentencing guideline definition of assault is what is considered crimes. Let's talk about this date of deportation. Yes, Your Honor. Under the Covey and Sandoval, which came out after we briefed this case, it's clear now that the failure to allege and prove the date of deportation is error and it's plain. However, it does not necessarily affect substantial rights, nor does it affect the fairness or reputation of the proceedings, as Covey and Sandoval itself found. Now is this plain error in this case because he objected all along? Well, Your Honor, the problem is there was not a real specific objection to the date of deportation. Well, he said he didn't admit any of these dates of deportation. Well, all the objection says is we don't admit to the accuracy of this section. So it doesn't tell us what, if anything, there is an objection to. And in the other parts where they do mention the date of deportation, it's clear from a reading that what they're really talking about is the nature of the prior conviction as it relates to that deportation. In other words, this specific issue of the date of deportation was never presented as a specific objection to the court. When you fail to do that, it's plain error. For example, in Sayet City, which is cited by counsel, there was an objection to an involuntary intoxication jury instruction because the court gave it as to one count of three counts and failed to give it as to the other two for aiding and abetting. What the defendant in that case did was present an alternative instruction on involuntary intoxication. This court said that's not enough. And the reason is clear. It doesn't give the court a fair chance to rule on the issue. But the government was on notice that the court had to prove the dates of deportation. Isn't that correct? No, Your Honor. Covey and Sandoval had not yet been decided. And in fact, there was an... But when he objected to, he said he didn't admit to any of the dates. All he said was we don't admit to the accuracy of this section. I mean, of the Doesn't that still put the government on notice that more information is required before that history is, whether facts can be found about that history? It may in some cases. But I think in this case, what is clear is what was being attacked consistently was the nature of the prior conviction. And so what comes of this is, well, it follows this deportation. And the other fact is there was a case in the Ninth Circuit prior to Covey and Sandoval which specifically held that the date of deportation is within the Almendorz-Torres exception. So we were under the impression at that time that it was not necessary. Well, that may be true. But let's assume for a moment that we What would be the remedy and how would that work? Well, if the court disagrees that it's not plain error review, it's harmless error review. And I believe it is harmless beyond a reasonable doubt because there is nothing in the record. As Rodriguez points out, it's harmless error if there's nothing in the record to suggest anything otherwise. In other words, there was no dispute. There was no specific evidence in the record. For example, there was no affidavit saying, no, I wasn't deported on that date. There was no other evidence put in that says, no, I wasn't deported on that date. In fact, what we know is before defendants plead guilty in the discovery, these things are all provided. Let's say we don't think it's harmless what happens. It goes back for resentencing and the date is proved. And the date is proved. So I think it's still harmless error. I mean, there's nothing to suggest. Well, there's no independent verification in the record. There's the date stated, but there's no underlying evidence discussing it. So presumably that would be the subject of a proceeding on remand to bring in those documents. That would be the That's true, Your Honor. But I think that's why it's harmless, because there's just as Rodriguez says, there's no sense in doing something that's perfunctory. There's no evidence. There's nothing to suggest that that deportation didn't take place. So there's no prejudice. There's nothing to harm the defendant here. So it is harmless beyond a reasonable doubt. Otherwise, it's just a perfunctory thing. We go back. We do it over. We present the documents. That is the classic case of harmless error. Now, would you take a moment to talk about whether the conviction for assault with the intent to do great bodily harm is or is not a categorical crime of violence or within the category that that's the enhancement? Absolutely. First, I would argue that we need not decide that issue here. This is a guideline case. It's not a statutory case where we have to apply a Taylor categorical analysis. The statutory maximum for a felony, which is not in dispute, is 10 years. It's only if you've committed an aggravated felony, is it 20 years. Here, this defendant was sentenced to less than 10 years. There's no constitutional problem that exists in this case. Second, even if we have to apply the Taylor categorical approach, we have here now in the sentencing guidelines a specific section that says it includes aiding and abetting. I guess the question is, as posed by opposing counsel, as to whether California's abetting is broader. I guess we've got Vidal up there. We've got the case before the Supreme Court. I guess we don't know the answer. Do you agree? Well, I think we do in this case. I do agree that probably the best thing to do here is to wait to see what happens with the Vidal case after the U.S. Supreme Court rules. That probably is the best way to go. But I think we have an answer in this case. There are two things. Number one, what the defense is arguing is that this natural and probable consequences theory is not part of federal law. Number one, there is a case, 493 Fed 2nd 1170, U.S. v. Short, which talks about the natural and probable consequences theory. Well, that may be true, but that issue is, I guess, kind of open to the Supreme Court. Well, the other thing is, using the modified categorical approach here, we can show that that is not possible in this case. The only time the natural and probable consequences can come in is if you're charged with one crime and then you get found guilty of something else because the aiding and abetting helped a principal who then committed some other crime. Here, in the complaint, there's three crimes. They're all assault. There is no natural and probable consequence crime that can have been committed. There's nothing less and there's nothing more. There's nothing less and there's nothing more. So whether that theory applies or not, we can now say, in this case, given the documents we have, that theory can't hold up. Let me ask exactly what the language was that he pled to. Yes, Your Honor. She wants to know what he pled to. I'm looking. He pled guilty. I don't have an ER page on this. The problem is, yeah, it's in this big, long section of which the district courts was tabbed. Unfortunately, ours is not. But there is here, near the end, a felony complaint. He pled guilty to count two. On or about October 22, 2002, in the above judice, the crime of assault, by means likely to produce great bodily injury, in violation of penal code section 245A1, a felony, was committed by Joe Ornelas, Daniel Robert Mendoza, and Marco Torres who did willfully and unlawfully commit an assault on other inmates by means of force likely to produce great bodily injury. And the other two counts, the one count is an assault count of a deadly weapon. And the other is the crime of riot. So I think what we have here is, as I said, Vidal is coming down. We probably can wait for that. But I think it's not absolutely necessary in this case. I think that we can say, in this case, the natural and probable consequences theory isn't going to apply. Thank you, counsel. Your time has expired. Ms. Rogers, you used your time, but we'll give you one minute for rebuttal. Thank you, Your Honor. I appreciate it. If I could start, Your Honor, by correcting what the result would be on remand were this court to find the Covey and Sandoval error that I outlined. The result would not be to put more evidence in the record, and that's because an apprendee error occurred here. Under apprendee, any fact other than the fact of a prior conviction, including the date of removal under Covey and Sandoval, must be proven to a jury beyond a reasonable doubt or admitted by the defendant. It was never admitted. It will not be admitted on remand. And the statutory maximum in this case is two years under apprendee when this case remands this case for resentencing, should it choose to do so. In regard to Mr. Urquidez's never denying the deportations, it's flatly untrue. He denied them repeatedly. I encourage Your Honors to go back to the ER and look at that. In fact, in her response to the PSR objections, the probation officer specifically responds to the date of deportation issue. That's number six of the PSR objection responses, showing that the court was apprised of the exact problem I raised and overruled the objection that defense counsel made. I believe that my time is up again, Your Honors. Thank you very much.
judges: B. Fletcher, Fernandez, Graber